Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff JoAnne Raney*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| JoAnne Raney,<br><br>    Plaintiff,<br><br>    v.<br><br>Life Insurance Company of North America, Spire Capital Partners, L.P., Group Short Term Disability Plan for Employees of Spire Capital Partners, L.P.,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff JoAnne Raney (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

-1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

## *Parties*

3. 2. Plaintiff is a resident of Maricopa County, Arizona.

4. 3. Upon information and belief, Defendant Spire Capital Partners, L.P. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured and administered by Life Insurance Company of North America (hereinafter referred to as "LINA"). The specific LINA policy is known as group policy SGD0600885. The Company's purpose in subscribing to the LINA policy was to provide disability insurance for its employees. Upon information and belief, the LINA policy may have been included in and part of the Group Short Term Disability Plan for Employees of Spire Capital Partners (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. 4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to LINA. Plaintiff believes that as it relates to her claim, LINA functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

6. 5. Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also

1  liable for payment of those benefits and would also then be liable for a significant sum of money in Plaintiff's long term disability claim. [1]

6. The Company, Plan and LINA conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 22, 2010 due to serious medical conditions and was unable to work in her designated occupation as a Telemarketer. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

10. Following her disability, Plaintiff applied for short term disability benefits under the relevant Plan or LINA policy. The relevant short term disability policy provides the following definition of disability:

> You are considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular Occupation; and
>
> 2. unable to earn 80 percent or more of his or her Covered Earnings from working in his or her Regular Occupation.

11. In support of her claim for short term disability benefits, Plaintiff submitted medical records to LINA from her treating physicians supporting her disability as defined by the relevant LINA policy.

12. LINA notified Plaintiff in a letter dated December 13, 2010 that it was denying her claim for short term disability benefits.

13. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the December 13, 2010 denial of her short term disability benefits. In support of her appeal, Plaintiff submitted to LINA additional medical evidence demonstrating she met the applicable definition of disability set forth in the relevant LINA policy.

14. As part of its review of Plaintiff's claim for short term disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from one of its Nurse Case Managers. Plaintiff believes the Nurse Case Manager has an incentive to protect their employment with LINA by providing reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim in order to provide opinions and report(s) which are favorable to their employer, LINA.

15. LINA notified Plaintiff in a letter dated March 15, 2011 that it was upholding its denial of her short term disability benefits.

-4-

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the March 15, 2011, denial of her short term disability benefits in a letter dated September 8, 2011. In support of her appeal, Plaintiff submitted to LINA additional medical, vocational and lay witness evidence demonstrating she met the applicable definition of disability set forth in the relevant LINA policy.

17. In support of her appeal, Plaintiff submitted a Functional Capacity Evaluation Report dated July 16, 2011 from a qualified physical therapist who determined after several hours of evaluation that Plaintiff "would be INCAPABLE of performing even SEDENTARY work on a regular and consistent basis…"

18. In addition, Plaintiff submitted a vocational report from a certified vocational expert dated September 8, 2011 wherein the expert opined Plaintiff "is unable to perform material (essential) duties of her regular occupation or any other occupation." The vocational expert also opined Plaintiff "is unable to engage in any gainful employment as a result of her limitations and work restrictions…"

19. Plaintiff also submitted a narrative letter dated September 22, 2011 from a treating board certified physician who opined Plaintiff "is now incapable of working on any regular consistent basis. She would require such unreasonable accommodations…that working anywhere would be difficult at best…At this point in time I feel that it is reasonably expected that Plaintiff will be unable to work indefinitely."

20. In addition to the medical records and vocational reports submitted to LINA, Plaintiff submitted a sworn affidavit from a family member who opined Plaintiff is unable to work in any occupation and her condition has not improved in any way since her date of disability.

21. Plaintiff also submitted a sworn affidavit from a friend who confirmed she is unable to work in any occupation and her condition has not improved in any way since her date of disability.

22. As part of its review of Plaintiff's claim for short term disability benefits, LINA obtained a medical records only "paper review" of Plaintiff's claim from one of its Medical Consultants and Behavioral Health Specialists. Upon information and belief, Plaintiff believes the Medical Consultant and Behavioral Health Specialist are employees of LINA who have an incentive to protect their employment with LINA by providing paper reviews which selectively review or ignore evidence such as occurred in Plaintiff's claim in order to provide opinions and report(s) which are favorable to LINA and supported the denial of Plaintiff's claim.

23. In a letter dated December 9, 2011, LINA notified Plaintiff it had denied her appeal for short term disability benefits under the LINA policy. In the letter, LINA notified Plaintiff she could file a civil action in federal court pursuant to ERISA.

24. In denying Plaintiff's claim, LINA failed to adequately investigate and failed to engage Plaintiff and/or her treating physicians in a dialogue during the appeal so Plaintiff could perfect her appeal and claim. LINA's failure to investigate the claim and to engage in this dialogue or to communicate to Plaintiff what evidence it believed was important for her to perfect her claim is a violation of ERISA, Ninth Circuit case law and a reason she did not receive a full and fair review.

25. Upon information and belief, LINA denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, disregarding Plaintiff's self-reported symptoms, failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the

combination of those diagnoses and impairments, failing to obtain an Independent Medical Examination when the Plan and/or policy allowed for one, failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

26. In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [2]

27. Plaintiff believes one reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its aforementioned conflicts of interest. Plaintiff believes LINA's conflict of interest is evident in the fact that if it found she met the definition of short term disability in the self insured Plan or its policy and Plaintiff exhausted those benefits, LINA would then be confronted with the potential of incurring significantly more liability in Plaintiff's long term disability claim since LINA fully insured that policy. Due to its conflict of interest, when LINA denied Plaintiff's short term disability claim it precluded her from filing a LINA long term disability claim and as a result, LINA saved a significant sum of money.

28. Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest and any individual who reviewed her claim and the Court may properly weigh and

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny her claim.

29. With regard to whether Plaintiff meets the definition of disability set forth in the Plan and/or policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion to LINA, its unlawful violations of ERISA committed during the review of Plaintiff's claim as referenced herein are so flagrant they justify *de novo* review.

30. As a direct result of LINA's decision to deny Plaintiff's disability claim she has been injured and suffered damages in the form of lost short and long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan/policy and/or Company as a result of being found disabled.

31. As referenced herein, since exhausting short term disability benefits pursuant to the Plan and/or policy was a pre-requisite for Plaintiff to be eligible for long term disability benefits, LINA's denial of her short term disability claim precluded her eligibility for long term disability benefits pursuant to the LINA long term disability policy.  At present, but for LINA's erroneous denial of her short term disability claim she would now be eligible for long term disability benefits.

32. Plaintiff seeks a determination in this litigation that she meets the definition of disability and is entitled to benefits in both the short term disability Plan/policy and the LINA long term disability policy since the definitions of disability are essentially the same in those documents and the aforementioned evidence already submitted to LINA by Plaintiff proves she meets both the short and long term definitions of disability.  Moreover, Plaintiff also seeks a determination that it is administratively futile for her to file a claim for long term disability benefits with LINA given the fact LINA is the decision maker and

payor of benefits in the long term disability claim, the definitions of disability are essentially the same in both claims as is the evidence. Therefore, it is administratively futile for Plaintiff to file a long term disability claim as there is no reason to believe LINA would approve that claim given the fact it has already denied her short term claim on several occasions.

33. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

34. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that Plaintiff meets any definition of disability set forth in both the short term disability Plan/policy and the LINA long term disability policy and the relief sought in Paragraph 32 herein. For an Order requiring Defendants to pay Plaintiff short and long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the aforementioned short term disability Plan and/or LINA long term disability policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order requiring Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

Case 2:12-cv-00569-DGC   Document 1   Filed 03/18/12   Page 10 of 10

DATED this 18th day of March, 2012.

        SCOTT E. DAVIS. P.C.

        By:   */s/ Scott E. Davis*
                Scott E. Davis
                Attorney for Plaintiff